IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IVORY MITCHELL,<br>TDCJ #00363139, | §<br>§<br>§ | |
| Plaintiff, | § | |
| v. | §<br>§ | CIVIL ACTION NO. H-18-3804 |
| BRYAN COLLIER, *et al.*, | §<br>§ | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Ivory Mitchell ("Mitchell"), currently in custody of the Texas Department of Criminal Justice ("TDCJ"), filed this *pro se* complaint under 42 U.S.C. § 1983 alleging that prison officials failed to protect him from gang members. Docket Entry No. 1 ("Complaint"). At the Court's request, Mitchell filed a More Definite Statement of his claims. *See* Docket Entry No. 9 ("MDS"). The Court also requested a *Martinez* Report from the Office of the Attorney General of Texas as *amicus curiae*, (Docket Entry No. 11), and an answer from Defendants Kelly Enloe, Travis Turner, and Bryan Collier (Docket Entry No. 36).

Pending are Defendants Bryan Collier and Travis Turner's Motion for Judgment on the Pleadings (Docket Entry No. 59); Defendant Kelly Enloe's Motion for Summary Judgment (Docket Entry No. 77); and Mitchell's Motion for a Temporary Injunction (Docket Entry No. 82). The Court has carefully considered the motions, responses, evidence, and applicable law and concludes as follows.

# I. **Background**

Mitchell alleges that his problems in prison with the 5-Deuce Crips Gang ("the Crips") started in the aftermath of a 2009 incident where he reported that he was the victim of ongoing sexual abuse by a female guard, Lisa Winston.[1] Winston allegedly had been assisting the Crips with their illegal activities in the prison.[2] Mitchell sued Winston and obtained a default judgment against her for his sexual abuse claim, and Winston was also terminated as a result of her conduct.[3] Mitchell claims that in retribution for reporting Winston and/or another Crips boss, the Crips threatened him, required him to pay protection money, and, on at least three occasions, assaulted him, causing severe injuries.[4]

In particular, Mitchell alleges that a Crips gang member severely beat him at the Telford Unit in March 2010, resulting in serious injuries including a broken hip and concussion.[5] When he returned to the unit after months in the hospital, members of the Crips told him that he had better get off the unit and that this

---

[1] Complaint at 10-11, 16; MDS at 2, 7. Unless otherwise specified, citations to the record reflect the pagination stamped at the top of the page by the CM/ECF system.

[2] MDS at 8.

[3] Complaint at 6.

[4] MDS at 8.

[5] Complaint at 5-6.

was the last warning.[6]  Mitchell sought help from an organization called "Just Detention International," which contacted the Ombudsman.[7]  Shortly after that, Mitchell was transferred to the Boyd Unit.[8]

At the Boyd Unit, Mitchell was again threatened by the Crips and sought help from the safe prisons officer on February 15, 2011. The officer allegedly told Mitchell to talk to him later, but Mitchell was assaulted and badly beaten by gang members in the Day Room the day after he sought help.[9]

Mitchell was later paroled, but returned to TDCJ on January 30, 2016.[10]  He alleges that he was transferred from unit to unit from about January 30, 2016 until December 20, 2017.[11]  When Mitchell was at the Wynne Unit in December 2017, he filed a complaint that he did not feel safe there, and TDCJ opened an Offender Protection Investigation ("OPI") to determine whether the threats were substantiated.[12]

---

[6] Id. at 6.

[7] Id.

[8] Id.

[9] Id. at 7.

[10] Id. at 12.

[11] Id.

[12] Id.; *see also* Docket Entry No. 77-2 at 25-34.

Mitchell was reassigned to the Terrell Unit in December 2017 due to medical issues.[13] Because he was reassigned to a different unit, the State Classifications Committee ("SCC") handling his Wynne OPI determined that Mitchell's complaint regarding the Wynne Unit was resolved.[14]

At the Terrell Unit, Mitchell filed a second complaint stating that, within days of his arrival at the Terrell Unit, he was again threatened by a Crips member.[15] TDCJ officials opened another OPI on January 12, 2018.[16] On his OPI form, Mitchell requested a transfer because he was approached by Crips members at Terrell and told that he needed to pay protection money and had refused.[17] On January 14, 2018, the Terrell Unit Classification Committee ("UCC") Investigator, Sergeant Rodolfo Diaz, reported on the OPI form that Mitchell had indicated that he did not feel at risk of assault from other offenders on the unit.[18] Diaz also reported that, although he was able to substantiate Mitchell's allegations regarding the sexual abuse by Winston, Diaz was unable to verify Mitchell's

---

[13] Complaint at 12; Docket Entry No. 77-2 at 25-34; Docket Entry No. 77-20 at 61.

[14] Docket Entry No. 77-2 at 24, 34.

[15] Complaint at 12, 13.

[16] Id.; Docket Entry No. 77-2 at 14-23.

[17] Docket Entry No. 77-2 at 17.

[18] Docket Entry No. 77-2 at 19 (OPI entry dated January 14, 2018) (under seal).

allegations about his troubles with gang members who were connected to Winston.[19]  On January 15, 2018, the UCC returned the case to Diaz for additional information, and on January 16, 2018, Warden Miller and the UCC ultimately recommended "safekeeping as interviews show[ed that] other offenders are aware of his debt and former employee relationship and [that Mitchell] could be [the] target of assault in gen[eral] population."[20]

At the SCC level, Defendant Kelly Enloe reviewed Mitchell's case and issued an opinion denying the UCC's recommendation for transfer and safekeeping.[21]  Enloe cited the following reasons for the decision:

> Offender has served 32 of 45 years in [general population].  He did receive a major case in 2009 for establishing a relationship with an officer; however, there is no evidence to support his allegations that the Crips are threatening him over an incident that happened 8 years ago. He is of average size and does not appear weak or feminine.  He is not a first time offender and is accustomed to living within the institutional environment.[22]

---

[19] Id.

[20] Docket Entry No. 77-2 at 20; Complaint at 12-13; MDS at 2.

[21] Complaint at 12; Docket Entry No. 77-2 at 14.

[22] Docket Entry No. 77-2 at 14.  *See also* Docket Entry No. 77-22 at 1-4 (TDCJ Protective Safekeeping Policy); id. at 5-6 (TDCJ Safekeeping Policy, listing factors such as: (1) evidence of victimization; (2) physical size; (3) mental/physical impairments; (4) age/first time offender; (5) sexual orientation; (6) whether the problem is unit-specific; (7) whether the offender has factors, such as sexual assault convictions, that would make it dangerous for the other safekeeping offenders; and (8) the offender's previous history in safekeeping).

The UCC History Form entry from January 31, 2018 reflects that the SCC found no evidence to support Mitchell's allegations and that he would remain on G2 in the general population.[23] The UCC History Form also reflects that Mitchell was not removed from the general population because the UCC rehoused the offender who allegedly had been threatening Mitchell to another dorm at the Terrell Unit away from Mitchell.[24]

In the early morning hours of February 18, 2018 at the Terrell Unit, Mitchell was brutally attacked while he was using the bathroom.[25] Mitchell recounts that he was hit from behind with a commissary fan motor and did not see who hit him.[26] He was rushed to the hospital where he was treated for a severe head and eye injury and major concussion.[27] He also reports that he received several broken bones in his face, a knot in the back of his head, and damage to his hip implant.[28] Mitchell alleges that Enloe and Defendant Turner of the SCC failed to protect him after his long history of being threatened and attacked by gang members at various

---

[23] *See* Docket Entry No. 77-1 at 3 (UCC History Form entry for Jan. 31, 2018) (under seal).

[24] Id.

[25] Complaint at 13; MDS at 3.

[26] MDS at 3.

[27] Id.

[28] Id. at 9-10.

units in TDCJ.[29]  He claims that he lives in fear of the Crips because TDCJ will not place him in safekeeping and he has been assaulted numerous times by gang members in the general population.[30]

After Mitchell was assaulted, he was approved for transfer to the Jester III Unit on February 20, 2018.[31]  While this case was pending, Mitchell claimed that he was currently in danger at the Jester III Unit and filed a letter alleging that he was being threatened by gang members, which the Court construed as a motion for a temporary injunction and set the hearing for February 1, 2019.[32]  At that hearing, the Warden for Jester III Unit agreed to place Mitchell in safekeeping for three weeks until the Court held a hearing on the preliminary injunction.[33]  TDCJ then transferred Mitchell to the Pack Unit away from the offender that he alleges threatened him.[34]  At the preliminary injunction hearing held on March 1, 2019, the Court determined that Mitchell did not submit any evidence of a present threat at the Pack Unit and denied his

---

[29] Complaint at 13; MDS at 4.

[30] MDS at 6.

[31] MDS at 8; Docket Entry No. 77-2 at 2.

[32] *See* Docket Entry Nos. 14, 16.

[33] *See* Docket Entry No. 24.

[34] *See* Docket Entry Nos. 31, 32.

motion for a preliminary injunction.[35]

In April 2019, Mitchell filed several letters to the Court regarding safety concerns at the Pack Unit.[36] On May 7, 2019, Mitchell was transferred to the LeBlanc Unit.[37] He has filed additional letters complaining about conditions at the LeBlanc Unit and reiterating his request for safekeeping.[38] In September 2019, he was approved to be released to parole after he successfully completes a three-month rehabilitation program starting on or around December 2019.[39] Although he is scheduled for parole soon, Mitchell has filed a motion to obtain injunctive relief to restrain the members of the SCC "from their authority and control" and to require the SCC to place Mitchell in safekeeping because he alleges he still is forced to do favors for gang members in order to get along on LeBlanc Unit.[40]

---

[35] *See* Docket Entry No. 38.

[36] Docket Entry Nos. 51, 52, 53.

[37] Docket Entry No. 60.

[38] *See, e.g.*, Docket Entry Nos. 66, 69, 74, 79, 87, 88, 91-95, 97.

[39] *See* TDCJ Offender Search website, available at https://offender.tdcj.texas.gov/OffenderSearch/reviewDetail.action?sid=02278077&tdcj=00363139&fullName=MITCHELL%2CIVORY+RAY (last visited Jan. 13, 2020); *see also* Docket Entry No. 94.

[40] Docket Entry No. 82 at 3.

## II.  <u>Legal Standards</u>

## A.  <u>Prison Litigation Reform Act</u>

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). On review, a court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In conducting that analysis, a court reviews a prisoner's *pro se* pleadings under a less stringent standard than those drafted by an attorney and construes them liberally, including all reasonable inferences which can be drawn from them. <u>Haines v. Kerner</u>, 92 S. Ct. 594, 595-96 (1972); <u>Alexander v. Ware</u>, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. <u>Neitzke v. Williams</u>, 109 S. Ct. 1827, 1831-32 (1989); <u>Talib v. Gilley</u>, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." <u>Harris v. Hegmann</u>, 198 F.3d 153, 156 (5th Cir. 1999) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 718 (5th Cir. 1999) (quoting <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998)).

9

A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Newsome v. EEOC, 301 F.3d 227, 231 (5th Cir. 2002). Under that standard, courts must assume that plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. Id. (citations omitted). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

**B.   Summary Judgment Standard**

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir. 2004) (quoting Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999)). "Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. United States v. Houston Pipeline Co., 37 F.3d 224, 227 (5th Cir. 1994).

## C.  **Qualified Immunity**

Qualified immunity generally shields public officials acting within the scope of their authority from civil liability. *See* Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).

Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Id. at 2080 (citation omitted). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." Fraire v. City of Arlington, 957 F.2d 1268, 1272 (5th Cir. 1992).

When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the defense once it is properly raised. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008) (citing Bazan ex rel. Bazan v. Hildago County, 246 F.3d 481, 489 (5th Cir. 2001).

## III.  Discussion

### A.  Travis Turner and Bryan Collier

Turner and Collier move to dismiss, contending that Mitchell fails to allege how they were personally involved in Mitchell's case.  Personal involvement is an essential element of a civil rights cause of action.  *See* Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992) (holding that a plaintiff bringing a section 1983 action must "specify the personal involvement of each defendant"); *see also* Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (holding that a supervisory official may be held liable under § 1983 only if he is personally involved in the deprivation or implements an unconstitutional policy that causes the constitutional harm).

In Mitchell's More Definite Statement, he was required to state specific facts to show each Defendant's personal involvement. MDS at 2-4.  In that pleading, Mitchell does not state facts to show how Collier was personally involved in any of the alleged harms or how he failed to protect him.

Likewise, Mitchell does not allege facts to show how Turner was personally involved in his case.  Other than identifying Turner as the Chairman of the SCC, Mitchell does not connect any specific act or policy to Turner that caused him harm.  In that regard, there is no indication that Turner had any role in the decision regarding Mitchell's status or that Turner knew any of the facts or

issues regarding his case.

In addition, Mitchell does not allege facts showing that either Turner or Collier implemented an unconstitutional policy that resulted in a violation of his constitutional rights. Without any facts establishing either Collier's or Turner's personal involvement or implementation of a constitutionally defective policy, Mitchell's claims against Collier and Turner rest on a theory of vicarious liability or *respondeat superior*, which is not a basis for recovery under section 1983. Iqbal, 129 S. Ct. at 1949; Porter, 659 F.3d at 446. Accordingly, the claims against Turner and Collier must be dismissed for failure to state a claim under section 1983.

Concomitantly, because Mitchell does not state a claim for a constitutional violation against either Turner or Collier, he does not overcome their assertions of qualified immunity. al-Kidd, 131 S. Ct. at 2080. Accordingly, these claims are subject to dismissal.

**B.    Kelly Enloe**

Enloe moves for summary judgment, contending that Mitchell does not raise a fact issue regarding his failure to protect claim and asserting her entitlement to qualified immunity. She argues that Mitchell does not show that she was deliberately indifferent to a substantial risk of serious harm to Mitchell of which she was

subjectively aware. She also contends that her decisions regarding his classification were objectively reasonable based on the circumstances.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). To state a claim for deliberate indifference, a plaintiff must plead facts to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see also Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002); Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002).

Deliberate indifference is an "extremely high standard to meet," Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006), because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." Morgan v. Hubert, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting Farmer, 114 S. Ct. at 1979).

Enloe argues that there is no evidence that she was aware of facts from which an inference could be drawn that Mitchell faced a substantial risk of serious harm and that she actually drew that inference and disregarded the risk. Enloe has submitted evidence

15

to show that she considered many factors when she evaluated Mitchell's case in January 2018.

The Fifth Circuit has held that, even if a defendant knows that a plaintiff faced a substantial risk to his safety, "there would be no Eighth Amendment violation if the undisputed facts in the record demonstrated that they responded reasonably" to that risk. Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004). In addition, government actors like Enloe are entitled to qualified immunity "unless clearly established law showed that their response was insufficient." Id. In other words, if an official "reasonably responded" to a known substantial risk to the plaintiff, she is not liable under the Eighth Amendment, "even if the harm was ultimately not averted." Farmer, 114 S. Ct. at 1982-83; see also Longoria v. Texas, 473 F.3d 586, 593 (5th Cir. 2006) (holding that unarmed prison guards were entitled to qualified immunity because they did not violate clearly established law or act unreasonably when they did not intervene to protect an inmate).

In support of her motion for summary judgment, Enloe submitted an affidavit explaining that she is currently responsible for the assignment and classification of offenders, including offenders in safekeeping.[41] Enloe's evidence reflects that she considers several factors in accordance with TDCJ policy, including, among other things: (1) the entire history of the offender to determine whether

---

[41] Docket Entry No. 77-23 at 2 ("Enloe Aff.").

he poses a threat to the safety of others in safekeeping; (2) the offender's physical size; (3) offender's mental or physical impairments; (4) the criminal sophistication of the offender, that is, whether he is a first-time offender or has served a lengthy period of time to determine whether he is able to navigate the complexities of the correctional setting; (5) whether the threat is localized and could be addressed by moving the offender or the threat; and, critically, (6) whether the offender would be a threat to the others in safekeeping were he to be placed in safekeeping, for example, if he has a history of sexual assault or sexual misconduct.[42]

According to her report, Enloe considered the fact that Mitchell had already served 32 of his 45 year-sentence in the general population, which indicated to Enloe that Mitchell would likely know how to navigate the complexities of the correctional setting.[43] Enloe also noted that Mitchell is not a first-time offender and is accustomed to living in a prison environment with a history of numerous arrests involving five violent offenses, is serving time for an aggravated offense, and had his parole revoked in 2017 for failure to report, attempted aggravated rape, attempted sexual assault, and possession of a controlled substance.[44] Enloe

---

[42] Id. at 2-3.

[43] Id.; see also Docket Entry No. 77-2 at 14.

[44] Docket Entry No. 77-2 at 14, 22.

determined that Mitchell is of average size (about 6' 0" tall and 185 lbs), does not appear weak or feminine, and has a history of arrests for sexual assault, such that other safekeeping offenders could be less safe if Mitchell were to be placed with them.[45] Finally, Enloe noted that there was no evidence to support Mitchell's claims that the Crips were threatening him over an incident that happened over eight years ago and that the threats could not be verified.[46]

The record reflects that Enloe considered the information sent to the SCC and Mitchell's years of incarceration, physical stature, and history of violence and determined that placing him in safekeeping was not appropriate. Further, the record reflects that the offender that Mitchell claimed was threatening him was rehoused at the Terrell Unit before the February 2018 attack occurred. Therefore, it cannot be said that Enloe's actions in denying a transfer or safekeeping to Mitchell were objectively unreasonable given the all of the circumstances known to her at the time. *See* Moore v. Lightfoot, 286 F. App'x 844, 848-49 (5th Cir. 2008) (holding that a prison classification official was entitled to qualified immunity where the person threatening the prisoner-plaintiff had been moved and the defendant had considered factors to determine whether safekeeping was appropriate); *see also* Hare v.

---

[45] Id.; Enloe Aff. at 2-4.

[46] Docket Entry No. 77-2 at 14.

18

City of Corinth, 135 F.3d 320, 328-29 (5th Cir. 1998) (holding that the official was entitled to qualified immunity because the protective measures he took were "within the parameters of objective reasonableness," albeit unsuccessful).

Because Mitchell does not raise a fact issue that Enloe acted with deliberate indifference, and Enloe's actions cannot be said to have been objectively unreasonable in light of clearly established law, Enloe is entitled to qualified immunity regarding Mitchell's claims against her. Accordingly, Mitchell's claims against Enloe are subject to summary judgment.

## IV. **Motion for Injunctive Relief**

Mitchell has filed a motion for injunctive relief against the SCC to require them to place him in safekeeping. Defendants have filed a response in opposition, contending that Mitchell has not met his burden to show that he is entitled to such relief under the standard for obtaining preliminary injunctions under the PLRA.

As a threshold matter, before the Court could consider any type of injunction, Mitchell must demonstrate an ongoing violation of his constitutional rights. Brown v. Plata, 131 S. Ct. 1910, 1922 (2011); 18 U.S.C. § 3626(a). In addition, prison administrators are accorded wide-ranging deference in the adoption and execution of policies that in their judgment are needed to preserve internal order and discipline in the daily operations of

the prison system. *See* Bell v. Wolfish, 99 S. Ct. 1861, 1878 (1979). As Defendants point out, Mitchell has no constitutional right to be incarcerated in a certain facility, even if life in one prison unit may be more unpleasant than in another. *See* Olim v. Wakinekona, 103 S. Ct. 1741 (1983); Meachum v. Fano, 96 S. Ct. 2532, 2539 (1976) ("The Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison."). Thus, Mitchell may not dictate where he is located. Finally, any injunctive relief must comply with the PLRA, which provides, in relevant part:

> (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

As discussed above, Mitchell does not establish an ongoing violation of his constitutional rights regarding any of the Defendants. Accordingly, he is not entitled to injunctive relief under the PLRA, and his motion must be denied. *See* Brown v. Collier, 929 F.3d 218, 228, 253 (5th Cir. 2019) (holding that the prisoner-plaintiffs were not entitled to continuing injunctive

relief under the PLRA because they did not establish an ongoing violation of a federal right).[47]

## IV.  ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants Bryan Collier and Travis Turner's Motion for Judgment on the Pleadings (Docket Entry No. 59) is **GRANTED,** and the claims against them are **DISMISSED** with prejudice for failure to state a claim for which relief may be granted; it is further

**ORDERED** that Defendant Kelly Enloe's Motion for Summary Judgment (Docket Entry No. 77) is **GRANTED,** and all claims against her are **DISMISSED;** it is further

**ORDERED** that Plaintiff's Motion for a Temporary Injunction (Docket Entry No. 82) is **DENIED;** and it is

**ORDERED** that all other pending motions, if any, are **DENIED as MOOT.**

---

[47] To the extent that Mitchell alleges, in letters to the Court, that he is dissatisfied with medical care received at the LeBlanc Unit from providers at that unit or at the University of Texas Medical Branch ("UTMB"), those new claims are not part of the same transaction or occurrence as the 2018 denial of safekeeping currently before the Court. Therefore, such new claims involving different questions of law and fact against new defendants at the Le Blanc Unit or at the UTMB should be asserted, if at all, in a separate cause of action. *See* FED. R. CIV. P. 20(a).

The Clerk will provide a copy of this Order to the parties.

**SIGNED** at Houston, Texas, on this 8TH day of February, 2020.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE